UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

JESUS RIVERA,

           Petitioner,

           v.

UNITED STATES OF AMERICA,

           Respondent.
-------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: April 27, 2021

13-CR-424 (KMW)
18-CV-5252 (KMW)
18-CV-5996 (KMW)
**OPINION & ORDER**

KIMBA M. WOOD, District Judge:

    Petitioner Jesus Rivera seeks a writ of habeas corpus, pursuant to 28 U.S.C. Section 2255, to vacate, set aside, or correct his conviction for causing the death of Jose Miguel Mendez, by discharging and aiding and abetting the discharge of a firearm at Mendez, during and in violation of the attempted robbery of Mendez of narcotics and narcotics proceeds. Rivera argues that (1) there was no factual basis for his guilty plea; (2) he did not understand the nature of the charge to which he pled guilty; (3) his sentence is unreasonable; (4) his counsel was ineffective; and (5) attempted Hobbs Act robbery is not a "crime of violence." The Government opposes the Petition. For the reasons that follow, Rivera's Petition is DENIED.

## BACKGROUND[1]

    Rivera was arrested on June 5, 2013 in connection with his involvement in the attempted robbery and murder of Mendez, a courier for Rivera's drug supplier. The Government charged

---

[1] Unless otherwise noted, all ECF citations refer to the criminal docket, *United States v. Rivera*, 1:13-CR-424 (KMW).

Rivera with (1) causing the death of Mendez by discharging and aiding and abetting the discharge of a firearm at Mendez, during and in relation to the attempted robbery of Mendez of narcotics and narcotics proceeds, in violation of 18 U.S.C. Sections 924(j)(1) and 2; and (2) killing Mendez, and aiding and abetting the same, while engaged in a narcotics conspiracy, in violation of 21 U.S.C. Section 848(e)(1)(A) and 18 U.S.C. Section 2.  (First Gov't Opp'n at 1-2, ECF No. 62.)

On August 26, 2015, Rivera pleaded guilty, pursuant to a plea agreement, to the first charge, causing the death of Mendez through the use of a firearm, and aiding and abetting in the same, in violation of 18 U.S.C. Sections 924(j)(1) and 2.  (*Id*. at 4.)  On January 7, 2016, the Court sentenced Rivera to 270 months' imprisonment, followed by five years of supervised release.  (*Id.* at 7-8.)

On January 20, 2016, Rivera filed a notice of appeal.  Rivera argued that his indictment failed to state a distinct federal offense because Section 924(j) is merely a penalty provision for Section 924(c); his guilty plea lacked a sufficient factual basis; Hobbs Act robbery is not a "crime of violence" predicate to a Section 924(c) or (j) conviction; and his sentence was unreasonable.  On February 15, 2017, the Second Circuit affirmed Rivera's conviction and dismissed each of these arguments.  *United States v. Rivera*, 679 F. App'x 51 (2d Cir. 2017) (summary order).

On June 8, 2018, Rivera filed two Section 2255 petitions—one through counsel (Pet., ECF No. 55) and one *pro se* (*Pro Se* Pet., ECF No. 56).  The Government filed an opposition on September 25, 2018 (First Gov't Opp'n, ECF No. 62), and Rivera filed a reply on January 3, 2019 (First Reply, ECF No. 73.)  Rivera then filed three motions to amend his petition—a counseled motion on January 30, 2019 (First Mot., ECF No. 74), a *pro se* motion on November

19, 2019 (Second Mot., ECF No. 87), and another counseled motion on January 9, 2020 (Third Mot., ECF No. 88). The Court granted Rivera's First and Third Motions to Amend and denied Rivera's Second Motion to Amend on January 29, 2020. (16-CV-5238, ECF No. 5.) The Government filed a subsequent opposition in response to Rivera's First and Third Motions to Amend on March 6, 2020. (Second Gov't Opp'n, ECF No. 100.) Rivera filed a subsequent reply on May 14, 2020. (Second Reply, ECF No. 106.)

## LEGAL STANDARDS

Pursuant to 28 U.S.C. Section 2255, a petitioner may seek collateral review of a federal sentence when "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief is available under Section 2255 "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). The petitioner has the burden of proving, by a preponderance of the evidence, that he is entitled to relief. *Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000).

Where (as here), a petitioner's collateral challenge is based on constitutional claims, two claim preclusion rules apply. *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010). First, under the so-called "mandate rule," "[w]hen an appellate court has once decided an issue, the trial court, at a later stage of the litigation, is under a duty to follow the appellate court's ruling on that issue." *Brown v. City of Syracuse*, 673 F.3d 141, 147 (2d Cir. 2012) (quoting *Doe v. N.Y. City Dep't of Soc. Servs.*, 709 F.2d 782, 788 (2d Cir. 1983)). Absent an intervening

change in law or circumstance, the mandate rule bars Section 2255 petitioners from re-litigating matters expressly or impliedly "resolved by the appellate court's mandate." *Yick Man Mui*, 614 F.3d at 53. Under the mandate rule, "ineffective assistance claims in a Section 2255 proceeding" are precluded "when the factual predicates of those claims, while not explicitly raised on appeal, were nonetheless impliedly rejected by the appellate court mandate." *Id.* at 153-54 (citing *United States v. Pitcher*, 559 F.3d 120, 124 (2d Cir. 2009)).

Second, while the mandate rule operates to bar claims resolved on direct appeal, procedural default bars claims that were *not* raised on appeal, unless the petitioner shows either: (1) cause and prejudice for the failure to raise the claim; or (2) that the petitioner is actually innocent of the crime. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007). To establish "cause" for failure to raise a claim on direct appeal, a petitioner must show "some objective factor external to the defense, such that the claim was so novel that its legal basis was not reasonably available to counsel." *Gupta v. United States*, 913 F.3d 81, 84 (2d Cir. 2019) (internal quotations and alterations omitted). To establish "prejudice," a petitioner must show "'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168 (1982). "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (internal quotation marks omitted).

Ineffective assistance of counsel claims, however, may be raised in a collateral proceeding under Section 2255 regardless of whether the petitioner could have raised the claim on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) "that counsel's representation fell

below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984); *Weingarten v. United States*, 865 F.3d 48, 52 (2d Cir. 2017).  To demonstrate that counsel's performance was deficient for failing to raise a certain claim, "it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made."  *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).  Rather, a petitioner must show that "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  *Id.*

## DISCUSSION

Rivera makes several arguments: (1) that there was no factual basis for his guilty plea; (2) that he did not understand the nature of the charge to which he pled guilty; (3) that his sentence is unreasonable; (4) that his counsel was ineffective; and (5) that attempted Hobbs Act robbery is not a "crime of violence."  None of these arguments is persuasive.[2]

### I. Rule 11(b)(3): Factual basis for Rivera's guilty plea

Rivera's argument that there was no factual basis for his guilty plea is barred by the mandate rule.  Rivera argues that there was an insufficient factual basis for his guilty plea under Federal Rule of Criminal Procedure 11(b)(3) because the murder of Mendez was distinct from the robbery of Mendez, and thus could not constitute a violation of Section 924(j). (Pet. at 7-8.) As Rivera admits, he challenged the factual basis for his plea in his *pro se* direct appeal (First Reply at 14)—in part because he "did not cause the death of Jose Miguel Mendez through the use of a firearm by his coconfederate . . . nor aided and abetted the same." (*Pro Se* App. Pet. at

---

[2] Any arguments raised by the parties but not specifically addressed below have been considered by the Court on the merits and rejected.

5

5-17; *Pro Se* App. Reply at 1-3; *see also* First Reply at 14.) The Second Circuit addressed and rejected Rivera's Rule 11(b)(3) argument on the merits: "Rivera cites no clearly established law holding that a district court may not accept a guilty plea for aiding and abetting [] a § 924 crime absent the defendant's admission that the victim's death was planned in advance of an underlying robbery." *Rivera*, 679 F. App'x at 54-55 (citing cases). Thus, the mandate rule bars Rivera from re-litigating this claim. *See Yick Man Mui*, 614 F.3d at 53.[3]

## II.     Rule 11(b)(1)(G): Rivera's understanding of the nature of the charges against him

Rivera's claim that he did not understand the nature of the charges against him is also barred by the mandate rule. In his First Motion to Amend, Rivera re-packages his Rule 11(b)(3) argument and contends that his plea violated Rule 11(b)(1)(G) because "[n]one of the information offered to Rivera at the time of the plea made it clear that he could only be guilty if the death occurred 'in the course of' the underlying 924 (c) violation." (First Mot. at 7; *see id.* at 3-5.) Rivera admits that he "challenged . . . the basis of the plea in a pro se appeal to the Second Circuit Court of Appeals. Necessarily included in that challenge was the question of whether he understood the nature [of] the plea." (First Mot. at 13.) The Second Circuit found against Rivera, because he admitted that he "agreed . . . to assist" and was "involved in" the underlying narcotics robbery, and that "he did not cease his participation in the robbery, despite knowing that his associates possessed a firearm." *Rivera*, 679 F. App'x at 54. Thus, the mandate rule bars Rivera's Rule 11(b)(1)(G) argument. *See Pitcher*, 559 F.3d at 124 (citation omitted) (holding that a habeas petitioner may not avoid the mandate rule merely by offering "a slightly

---

[3] Even assuming, *arguendo*, that the mandate rule did not bar Rivera's Rule 11(b)(3) claim, Rivera cannot show cause and prejudice or actual innocence because the record contains ample evidence showing that Rivera participated in the robbery, which resulted in the murder of Mendez. (*See* First Gov't Opp'n at 12-17.)

altered rearticulation of a claim that was rejected on his direct appeal"); *Yick Man Mui*, 614 F.3d at 53.

Even assuming, *arguendo*, that Rivera's Rule 11(b)(1)(G) argument was not raised on appeal and thus was not barred by the mandate rule, Rivera is procedurally barred from raising issues not argued on appeal. Although ineffective assistance of counsel claims are not barred, Rivera cannot establish cause or prejudice under *Strickland*.

Rivera cannot establish cause, i.e., "that counsel's representation fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688, because Devin McLaughlin, Rivera's appellate counsel, researched aiding and abetting liability under Section 924(j) and came to the same conclusion as the Second Circuit—that Rivera's "continued participation in the robbery through to the murder, and the colloquy supporting this, was sufficient." (McLaughlin Aff. ¶ 6, ECF No. 76; *see Rivera*, 679 F. App'x at 54-55.)

Rivera cannot establish prejudice, i.e., "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694, because the record reflects that Rivera was advised of and understood the charges against him. (*See* Second Gov't Opp'n at 14-19; *Mintu v. United States*, 2018 WL 1474417, at *4 (S.D.N.Y. Mar. 26, 2018) (Briccetti, J.) (quoting *United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001)) (finding that, in the context of guilty pleas, counsel provided constitutionally effective representation where petitioner could not show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").) Judge Cott conducted a detailed allocution and advised Rivera of the charged crime and confirmed his understanding (Plea Tr. at 5-6, ECF No. 33), had the Government set forth the elements of the charged crime (*id.* at 12-14), and had Rivera allocute to

7

his participation in the charged crime (*id.* at 14-16).  The Second Circuit found the allocution sufficient to establish the elements of the charged crime.  (*Rivera*, 679 F. App'x at 55; *see* Second Gov't Opp'n at 15, 15 n.5.)  Only after he was sentenced did Rivera complain that he would not have entered the plea had he understood the nature of the charges against him.  This self-serving assertion is insufficient to demonstrate prejudice.  (*See* Second Gov't Opp'n at 14-19.)

### III.     Reasonableness of Rivera's sentence

Rivera argues that his sentence was unreasonable primarily because the Court did not (1) determine the degree that Rivera was involved in Mendez's murder (Pet. at 14-18) or (2) fully credit Rivera for a sentence that resulted from a separate but relevant offense (Pet. at 19-21; *see also id.* at 22-25).  Both claims are procedurally barred, and the Court need not reach the merits of either argument.

Rivera's reasonableness claims are barred because of the mandate rule.  (*See* First Reply at 28 ("Rivera challenged the reasonableness of the sentence in his *pro se* appeal.").)  In his direct appeal, Rivera argued that his sentence was unreasonable because the Court allegedly failed to consider and weigh the relevant Section 3553(a) considerations in formulating a sentence, including that he "had nothing to do with the tortur[e] and murder of Mendez."  (*Pro Se* App. Pet. at 17-20; *Pro Se* App. Reply at 4-5.)  The Second Circuit rejected Rivera's reasonableness claims as meritless because both the 270-month sentence that Rivera received (and even the "effective" 414-month sentence that Rivera argues that he received) were "within the applicable Guidelines range of 360 months to life, which we will rarely deem substantively unreasonable."  *Rivera*, 679 F. App'x at 51, 56 (citing *United States v. Messina*, 806 F.3d 55, 66 (2d Cir. 2015) (internal quotation marks omitted) (noting that Guidelines sentences are

substantively reasonable in the "overwhelming majority of cases")). Thus, Rivera's reasonableness claims are subject to the mandate rule. *See Pitcher*, 559 F.3d at124; *Yick Man Mui*, 614 F.3d at 53-55.[4]

Rivera's reasonableness claims are also barred because he knowingly and voluntarily waived his right to bring a Section 2255 petition challenging his sentence in his plea agreement. (*See* First Gov't Opp'n at 17-18.) The Second Circuit has held that "[i]n no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless." *United States v. Morgan*, 386 F.3d 376, 380 (2d Cir. 2004) (quoting *United States v. Salcido-Contreras*, 990 F.2d 51, 53 (2d Cir. 1993)). The record demonstrates that Rivera's acceptance of the waiver was knowing and voluntary; Rivera confirmed to Judge Cott that he had read the plea agreement and discussed it with his attorney, Rivera explained the factual basis for his guilt in his own words, and stated that he understood that he was waiving his rights to challenge a sentence within or below the stipulated guidelines range (as is the case here). (Plea Tr. at 9-16; First Gov't Opp'n at 17-18; *see Mintu*, 2018 WL 1474417, at *4; *United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001) ("[T]estimony [during a plea allocation] carries such a strong presumption of accuracy that a district court does not,

---

[4] Rivera's argument that he somehow did not receive a "full and fair hearing" on his reasonableness claims because he made the claim in his *pro se* briefs is unavailing. (First Reply at 28-31.) The Court is mindful that litigants who are proceeding *pro se* are generally entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.'" *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)). The Court notes that in Rivera's habeas petition and in his direct appeal, Rivera made a strategic decision to file *both* counseled briefs and *pro se* briefs while he was represented by counsel. For example, Devin McLaughlin, Rivera's appellate counsel, stated in an affidavit that he "communicated directly with Mr. Rivera through Corrlinks" and "reviewed and researched a number of potential appellate issues for Mr. Rivera," including Rivera's reasonableness claims. (McLaughlin Aff. ¶¶ 2, 5.)

9

absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made.").)

## IV. Ineffective assistance of counsel

Rivera's *pro se* and counseled briefs are sprinkled with ineffective assistance of counsel claims. Based on the record and the Court's familiarity with the underlying proceedings, the Court finds that Rivera has not overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

First, Rivera's claim that Lee Ginsberg, Rivera's trial counsel, failed to obtain a favorable plea outcome for him is frivolous. Rivera argues that, in negotiating the plea agreement with the Government, Ginsberg failed to obtain credit for the 144 months that Rivera previously served for relevant conduct, pursuant to U.S.S.G. Section 5G1.3. (*Pro Se* Pet. at 14-15, 36-37; Pet. at 28-29.) As the Government correctly notes, U.S.S.G. Section 5G1.3 applies only to an *undischarged* term of imprisonment, or an anticipated state term of imprisonment, neither of which applies here. (*See* First Gov't Opp'n at 20.) Ginsberg also concluded that "although the murder was related conduct to the [previous] conviction, under the United States Sentencing Guidelines there was no mandatory provision for Mr. Rivera to receive credit for the time previously served on the narcotics charge." (Ginsberg Aff. ¶ 8, ECF No. 77.)

Second, Rivera's argument that Ginsberg rendered ineffective assistance by failing to argue that the murder of Mendez was not committed "in the course of" the robbery is belied by the record. Rivera argues that Ginsberg "stood silent" and failed to raise the defense that Rivera was not personally responsible for the killing of Mendez. (Pet. at 26-29; First Reply at 37.) There is overwhelming evidence, however, that the murder took place in the course of the robbery. (*See, e.g.*, PSR ¶¶ 7-10; Plea Tr. at 12-16.) Ginsberg stated in an affidavit that he

10

considered Rivera's role in the murder, concluded that the law surrounding complicity and causation did not support a valid challenge to the murder charge, and decided to make arguments regarding Rivera's denial of participation in the murder at sentencing. (Ginsberg Aff. ¶¶ 14-16; *see* PSR ¶ 7; Sent. Tr. at 2.) Tellingly, the Second Circuit rejected similar arguments that Rivera made on direct appeal and confirmed that "the malice of the underlying robbery satisfies murder's malice requirement." *See Rivera*, 679 F. App'x at 55 (citing cases); *United States v. Croitoru*, 306 F. App'x 662, 664 (2d Cir. 2009) (citation omitted) ("[F]ailure to make a meritless argument does not amount to ineffective assistance.").

Third, Ginsberg's decision not to demand a hearing pursuant to *United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979), to determine Rivera's role in the murder cannot be considered ineffective assistance. (Pet. at 27; First Reply at 38-39.) Rivera contends that, had the Court understood Rivera's role in the murder and knowledge of the murder, he would have received a lesser sentence. (First Reply at 39.) There is overwhelming evidence that the murder took place in the course of the robbery. (*See, e.g.*, PSR ¶¶ 7-10; Plea Tr. at 12-16.) In addition, because Rivera did not dispute "95 percent" of the cooperator's statements, Ginsberg made a strategic decision not to bring to light the brutality of the robbery and murder in a hearing. (*See* Sent. Tr. at 2.) In all, Rivera has not demonstrated that Ginsberg's decision was unreasonable. *See United States v. Costa*, 423 F. App'x 5, 9 (2d Cir. 2011) (holding that counsel's strategic decision not to request a *Fatico* hearing "falls within the range of reasonable professional assistance").

## V.     Crime of violence

Rivera's argument that attempted Hobbs Act robbery is not a "crime of violence" under Section 924(c) fails.

A. Legal principles

Rivera pleaded guilty to violating 18 U.S.C. Section 924(j), which penalizes "a person who, in the course of a violation of [Section 924](c), causes the death of a person through the use of a firearm." Section 924(c) penalizes "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm."

The statutory definition of "crime of violence" has two clauses. The "residual clause" covers any felony that, "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B). The Supreme Court held that the residual clause of Section 924(c)(3)(B) was "unconstitutionally vague." *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019).

The so-called "elements clause" or "force clause" covers any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). In *Davis*, the Supreme Court reaffirmed that Section 924(c)'s force clause must be interpreted using a "categorical approach." *See* 139 S. Ct. at 2328; *United States v. Hill*, 890 F.3d 51, 55 (2d Cir. 2018). Under this approach, courts "evaluate whether the minimum criminal conduct necessary for conviction under a particular statute necessarily involves violence." *United States v. Hendricks*, 921 F.3d 320, 327 (2d Cir. 2019) (citations omitted). In conducting this analysis, courts "focus only on the elements of the offense and do not consider the particular facts of the underlying crime." *Id.* The Second Circuit has further held that, while Hobbs Act robbery qualifies as a crime of violence under the force clause, *Hill*, 890 F.3d 51, conspiracy to commit Hobbs Act robbery does not qualify as a crime of violence, *United States v. Barrett*, 937 F.3d 126 (2d Cir. 2019). To date, the Second Circuit

12

has not opined on whether *attempted* Hobbs Act robbery is a crime of violence under the force clause.

### B. Rivera's Third Motion to Amend

Rivera's crime of violence argument fails because of the mandate rule. In his Third Motion to Amend, Rivera argues that the offense upon which his Section 924(j) conviction is predicated, attempted Hobbs Act robbery, is not a crime of violence. (Third Mot. at 3-6; Second Reply at 22-25.) This argument is akin to Rivera's claim on direct appeal—that the Hobbs Act robbery during which Mendez was murdered is not a crime of violence under Section 924(c)(3)(A) because such a robbery does not categorically include a violent element and cannot qualify based on a substantial risk of physical force. *Rivera*, 679 F. App'x at 55 (citing *Hill*, 832 F.3d at 138).

The Second Circuit rejected this argument because it found that Rivera's Section 924(j) conviction rested on a valid predicate: a drug trafficking crime. *Rivera*, 679 F. App'x at 55. The court noted that, even though the Government moved to dismiss the substantive drug trafficking charge at sentencing, "[t]he plain language of § 924(c) requires only that the predicate crime, whether of drug trafficking or violence, have been committed; the defendant need not be separately charged with that predicate crime and be convicted of it, so long as there is 'legally sufficient proof that the predicate crime was, in fact, committed.'" *Id.* (citing *Johnson v. United States*, 779 F.3d 125, 129-30 (2d Cir. 2015); *United States v. Robinson*, 799 F.3d 196, 199 (2d Cir. 2015)). Because Rivera's own allocution provided the factual basis for the drug trafficking offense, the Second Circuit found Rivera's Section 924(j) challenge meritless. *Id.* Thus, the mandate rule bars Rivera's crime of violence argument.[5]

---

[5] Even assuming, *arguendo*, that the mandate rule did not bar Rivera's crime of violence argument, Rivera's briefs do not provide a persuasive analysis on why attempted Hobbs Act robbery does not constitute a crime of violence

13

## CONCLUSION

For the foregoing reasons, Rivera's petition under Section 2255 is DENIED.  Because Rivera's claims are meritless, and because he has not made a substantial showing of the denial of a constitutional right, the Court denies a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Clerk of Court is respectfully directed to terminate the petitions at ECF Nos. 55-56 and to close civil actions 18-CV-5252 and 18-CV-5996.

SO ORDERED.

Dated: New York, New York
April 27, 2021

/s/ Kimba M. Wood
KIMBA M. WOOD
United States District Judge

---

under Section 924's force clause, nor does Rivera even attempt to apply the categorical approach to provide a legal foundation for his argument.  *See United States v. Jefferys*, 2019 WL 5103822, at *6 (E.D.N.Y. Oct. 11, 2019) (citing *Hill*, 890 F.3d at 56 (determining whether a charged crime constitutes a crime of violence "requires more than the application of legal imagination to [the] . . . statute's language")).